No. 14-1895

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

BYRON BARTLETT
AND
CONNIE BEALS-BARTLETT,

Plaintiffs-Appellants

v.

BANK OF AMERICA, N.A.

Defendant-Appellee

_____

On Appeal from the United States District Court for the District of Maryland at Civil Action No. 1:13-cv-00975

_____

**APPELLANTS' OPENING BRIEF**

_____

Scott C. Borison
Legg Law Firm, LLC
1900 S. Norfolk St.
Suite 350
San Mateo CA 94403
(301) 620-1016
Borison@legglaw.com

Phillip R. Robinson
Consumer Law Center LLC
8737 Colesville Road
Suite 307
Silver Spring, MD  20910
(301) 637-6270
Phillip@marylandconsumer.com

*Counsel for Appellants*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1895__        Caption: __Byron Bartlett v. Bank of America NA__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Byron R. Bartlett and Connie J. Beals-Bartlett__

(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                              ☐YES ☑NO
       If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                              ☐YES ☑NO
       If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: ___/s/ Scott C. Borison_____    Date: ____09/10/2014_____

Counsel for: ___Appellants_____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____09/10/2014_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

___/s/ Scott C. Borison_____                   ____09/10/2014_____
(signature)                                                          (date)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................iii

STATEMENT OF JURISDICTION ..........................................................1

ISSUES PRESENTED.............................................................................1

STATEMENT OF THE CASE...................................................................1

STANDARD OF REVIEW.........................................................................3

SUMMARY OF ARGUMENT...................................................................3

ARGUMENT

I.    TITLE 15 U.S.C. § 1681g(g) IS NOT LIMITED TO "NEW"
      CLOSED END LOAN APPLICATIONS. IT APPLIES
      TO ANY CREDIT APPLICATION. "CREDIT" INCLUDES
      REQUESTS TO MODIFY EXISTING CREDIT
      ARRANGEMENTS........................................................................ 5

      a.    The FCRA............................................................................ 5

            1.    *15 U.S.C. § 1681m* ................................................ 7

            2.    *15 U.S.C. § 1681g(g)*............................................8

            3.    Credit under the FCRA...............................................11

            4.    The application for credit requirement was met
                  because the Plaintiff's applications related to a
                  loan that was "for a consumer purpose that is
                  secured by 1 to 4 units of residential real property"..16

      b.    BANA never timely provided Mr. or Mrs. Bartlett, the
            credit scores they obtained in connection with their
            application for credit nor did the Defendant provide
            them the disclosures required under § 1681g (g)(1)(D).....16

      *c.*    The District Court erred by modifying 15 U.S.C. §

i

1681g(g) to only apply to "new" applications for
credit.................................................................17

II.    MR. BARTLETT WAS NOT AN OBLIGOR UNDER MRS.
BARTLETT'S LOAN. HE MADE AN APPLICATION FOR
A CLOSED END LOAN TO THE DEFENDANT........................20

CONCLUSION..........................................................23

REQUEST FOR ORAL ARGUMENT....................................25

CERTIFICATE OF SERVICE ...........................................26

CERTIFICATE OF COMPLIANCE.....................................27

## TABLE OF AUTHORITIES

### Cases

*Anita's N.M. Style Mexican Food, Inc. v. Anita's Mexican*

  *Foods Corp.,* 201 F.3d 314 (4th Cir. 2000) ....................................3

*Barbour v. Int'l Union,* 640 F.3d 599 (4th Cir.2011) ....................................18

*Central Bank of Denver v. First Interstate Bank of Denver,*

  511 U.S. 164 (1994) ....................................19

*Domonoske v. Bank of Am., N.A.,* 790 F. Supp. 2d 466,

  469 (W.D. Va. 2011) ....................................10

*E.l. du Pont de Nemours & Co. v. Kolon Indus.,* 637 F.3d

  435 (4th Cir. 2011) ....................................3

*Estate of Davis v. Wells Fargo Bank,* 633 F.3d 529 (7th Cir. 2011)........13, 22

*Fides, A.G., v. Comm'r of Internal Revenue,* 137 F.2d

  731 (4th Cir. 1943) ....................................17, 18

*Grimes v. Fremont Gen. Corp.,* 785 F. Supp. 2d 269, (S.D.N.Y. 2011)........15

*Ignacio v. United States,* 674 F.3d 252 (4th Cir. 2012) ................................18

*Kingery v. Quicken Loans, Inc.,* 300 F.R.D. 258, 261 (S.D.W. Va. 2014)....11

*McAnaney v. Astoria Fin. Corp.,* 2008 WL 222524,

  (E.D.N.Y. Jan. 25, 2008) ....................................15

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798-99 (1973) ...............19

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)......................20

*Monster Daddy, LLC v. Monster Cable Products, Inc.*,

　　2012 WL 2513466, *3 (D.S.C. June 29, 2012)..........................................21

*North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 530 (1982).......................19

*Piotrowski v. Wells Fargo Bank, N.A.*  2013 WL 247549 (D.Md.,2013)......13

*Robertson v. Sea Pines Real Estate Companies, Inc.*, 679 F.3d

　　278 (4th Cir., 2010)....................................................................................3

*Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204 (9th Cir. 2013).........13, 14

*Tysons Toyota, Inc. v. Globe Life Ins. Co.*, 45 F.3d

　　428 (4th Cir. 1994) ..................................................................................20

　　*Monster Daddy, LLC v. Monster Cable Products, Inc.*, CA 6:10-1170-

TMC, 2012 WL 2513466, *3 (D.S.C. June 29, 2012)

*United States v. Deluxe Cleaners & Laundry, Inc.*, 511 F.2d

　　926, (4th Cir.1975)....................................................................................18

*United States Dept. of Transp. v. Paralyzed Veterans of Am.*,

　　477 U.S. 597 (1986)..............................................................................18, 19

*Vasquez v. Bank of Am. , N.A.*, 2013 WL 6001924, *13

　　(N.D. Cal. Nov. 12, 2013)........................................................................13

*Walton v. Wells Fargo Bank, N.A.*  2013 WL 3177888, 6

　　(D.Md.,2013).............................................................................................13

iv

**Statutes**

15 U.S.C. § 1681...............................................................................1, 6

15 U.S.C. § 1681a...................................................................................12

15 U.S.C. § 1681g ..........................................................................*passim*

15 U.S.C. § 1681m ................................................................................ 7

15 U.S.C.A. § 1691a........................................................................12, 21

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1331 ...................................................................................1

**Regulations**

12 C.F.R. § 202.2(j)..............................................................................13

12 CFR § 202.2 (e)................................................................................22

**Other Authorities**

75 FR 2741, Equal Credit Opportunity..........................................11

76 FR 41590-01 .........................................................................11

149 Cong. Rec. E2512-02, 149 Cong. Rec. E2512-02,

    2003 WL 22900844................................................................14

Black's Law Dictionary (9th ed. 2009).........................................22

Board of Governors for the Federal Reserve System,

    Division of Consumer and Community Affairs' Consumer
    Compliance Handbook (11/6)..............................................11

Federal Reserve CA-09-13 (December 4, 2009)...........................13

HAMP Supplement Directive 09-08 (November 3, 2009).........................13

San Francisco Federal Reserve Bank Letter dated December 23, 2009 ....14

## STATEMENT OF JURISDICTION

The District Court exercised jurisdiction over the claims of the Appellants Connie Beals-Bartlett and Byron Bartlett ("Plaintiffs") against the Appellee Bank of America, N.A. ("Defendant" or "BANA") based on a federal question under 28 U.S.C. § 1331. Plaintiffs claimed that the Defendant had violated the Fair Credit Reporting Act 15 U.S.C. § 1681 *et seq.* (FCRA)

This Court has jurisdiction pursuant to 28 U.S.C. § 1291. The District Court's grant of Defendant's motion to dismiss was a final disposition on the merits.

## ISSUES PRESENTED FOR REVIEW

1.    Whether the District Court erred by construing the applications subject to the disclosure requirements under 15 U.S.C. § 1681g(g) of the FCRA are limited to applications for  "new" loans when "credit" under the FCRA include changes to existing credit and deferral of payments of debts?

2.    Whether the District Court erred in its determination that Mr. Bartlett's application was not a "new" application for credit when he was not a party to the loan taken out by Mrs. Bartlett?

## STATEMENT OF THE CASE

The Plaintiffs filed their complaint against the Defendant on April 1,

1

2013. JA. 6. Mr. and Mrs. Bartlett's submitted applications to the Defendant for a modified close end loan. JA 8 at § 7.  There is no dispute the Bartletts applied for "modified closed end loan" or a modification of Mrs. Bartlett's mortgage loan serviced by Bank of America.  JA 8-10 (Com. at ¶¶ 4, 7-9, 11-16, 18, 21-23).    Further, there is no dispute the Bartletts were both parties to the application(s) submitted to Bank of America.  JA 9-10 (Com. at ¶¶ 10, 12-13, 16-18, 21, 24-25).  *See also* JA 48-94 (application of Mr. & Mrs. Bartlett presented to the District Court by BANA). As part of the application, the Bartletts affirmed, acknowledged and agreed that BANA could acquire their credit scores, review their financial information, and that they needed "a modification of the terms of [the] mortgage loan." JA at 51.

Mr. Bartlett was not a borrower on Mrs. Bartlett's loan. JA 9 (Com. At ¶ 11.) Mr. Bartlett was specifically identified as a "co-borrower" applicant on the application presented by Bank of America to the District Court.  JA at 49, 51.  His financial information was also included in the application.  JA at 53-66, 75-93.

The Plaintiffs claimed the Defendant negligently or willfully violated 15 U.S.C. § 1681g(g) because they obtained the credit scores of the Plaintiffs but did not timely disclose the credit scores nor did they provide the

disclosures mandated and set forth under § 1681g(g).[1]

Defendants moved to dismiss the Plaintiff's complaint. JA 15.  The District Court granted the Defendant's motion to dismiss. JA 247.  Plaintiffs timely noted their appeal of the District's court judgment.  JA.260.

### STANDARD OF REVIEW

The standard of review of the grant of Defendant's Motion to Dismiss is *de novo*. *Robertson v. Sea Pines Real Estate Companies, Inc.,* 679 F.3d 278, 283-284 (4th Cir., 2010) citing *Anita's N.M. Style Mexican Food, Inc. v. Anita's Mexican Foods Corp.,* 201 F.3d 314, 319 (4th Cir. 2000). Plaintiffs factual allegations must be taken as true and all reasonable inferences must be drawn in Plaintiffs' favor. *E.l. du Pont de Nemours & Co. v. Kolon Indus.,* 637 F.3d 435, 440 (4th Cir. 2011).

### SUMMARY OF ARGUMENT

The Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. (FCRA) **requires** creditors to disclose the credit information the creditors consider

---

[1] The District Court did not consider BANA's arguments and the Plaintiffs' request for leave to amend to add additional facts concerning whether the well pled claims supported a finding of willfulness under the FCRA.   JA 199=201.  Should this Court reverse and remand on the issues actually ruled upon by the District Court, the Plaintiffs would renew their request for leave to amend on BANA's alternative arguments.

in making credit decision to insure accuracy.  15 U.S.C. § 1681g(g) extends the creditor's disclosure obligations to credit scores involving home loans and providing specific disclosures that Congress determined was important to explain the credit scores. The disclosure requirements are important when any application for credit is made to and considered by a creditor. The District Court's limitation of the disclosure requirements under 15 U.S.C. § 1681g(g) to "new" loans adds a word to the statute; ignores that the statutory provision applies to all "credit" and "credit" includes modification to existing loans and deferral of debt owed; further, the District Court's holding contravenes FCRA's overall mandate of disclosures of information by creditors to credit applicants.

Moreover, if this Court accepts the "new" loan limitation on 15 U.S.C. § 1681g(g) it does not extinguish Mr. Bartlett's claim since his application involved a new loan obligation for him. Mr. Bartlett was not a co-borrower to Mrs. Bartlett's original, existing loan but he was a co-applicant on Mr. and Mrs. Bartlett's application for loan modification of **her** loan. For these reasons, it is respectfully submitted that the District Court's judgment should be reversed and the case remanded for further proceedings.

**ARGUMENT**

I.    TITLE 15 U.S.C. § 1681g(g) IS NOT LIMITED TO "NEW" CLOSED END LOAN APPLICATIONS. IT APPLIES TO ANY CREDIT APPLICATION. "CREDIT" INCLUDES REQUESTS TO MODIFY EXISTING CREDIT ARRANGEMENTS.

Plaintiffs respectfully contend that the District Court erred when it granted the Defendant's motion to dismiss Mr. & Mrs. Bartlett's claims under the FCRA. It was undisputed that the Defendant did not comply with § 15 U.S.C. § 1681g (g). The District Court erroneously limited the application of § 1681g (g) by adding the word "new" to the section of the statute.

a. The FCRA

The credit reporting business in the United States is a unique "information age" business. The sellers (consumer reporting agencies – "CRAs") make money by selling information about individuals to companies who are considering lending to the individuals.[2] However, the CRAs do not acquire the bulk of their information about the individuals directly from the individuals. Instead the CRAs rely on information it either

---

[2] Others may want to consider credit histories for other reasons, e.g., employment or rental applications, but this case only involves the extension of credit.

5

gathers or is supplied to it by third parties who claim to have information about the individuals. How the system works is often unknown or foreign to the general public.

Legally, the information gathered by the consumer reporting agencies lacks the required foundation to be admissible since the proponent of the information does not profess to have personal knowledge of the information and the information would constitute nothing more than hearsay.

The FCRA recognizes the importance of a person's credit history to our financial system. Congress made the following findings when it enacted the FCRA:

> The Congress makes the following findings:
>
> (1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.
>
> (2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.
> (3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.
>
> (4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681 (a).

Since the information sold by CRAs would not meet minimal legal standards, Congress provided for mechanisms that require anyone relying on this information to advise the consumer what information it obtained and from whom. This mandate appears in two different places under the FCRA.

### 1.    15 U.S.C. § 1681m

The first is a general disclosure requirement set forth at 15 U.S.C. § 1681m(a) relating to adverse actions on credit applications. This subsection of § 1681m is broken down into four categories:

- Consumer is entitled to notice of the adverse action [15 U.S.C. § 1681m(a)(1)];

- Consumer is entitled to the information under 15 U.S.C. § 1681g(f) [15 U.S.C. § 1681m(a)(2)];

- Consumer is entitled to know who provided the information; e.g., which CRA [15 U.S.C. § 1681m(a)(3)]; and

- Consumer is entitled to notice of the right to obtain a copy of the report [15 U.S.C. § 1681m(a)(4)].

The last right is crucial since it provides the consumer the opportunity to review the information gathered by the CRA from others.

Given that a person's financial life may depend on what a credit report may say about the person, this aspect of the FCRA, which requires disclosure to the consumer, cannot be understated and is the very safeguards Congress intended

### 2.    *15 U.S.C. § 1681g(g)*

The second disclosure requirement, which is the issue for this case, is found at 15 U.S.C. § 1681g(g). In addition to the disclosure of the credit score information obtained, the section also requires that the creditor provide a specific disclosure explaining the credit score system. This requirement provides:

> (g) Disclosure of credit scores by certain mortgage lenders
> (1) In general
> **Any person who makes or arranges loans and who uses a consumer credit score,** as defined in subsection (f) of this section, in **connection with an application initiated or sought by a consumer** for a closed end loan or the establishment of an open end loan for a **consumer purpose** that is secured by 1 to 4 units of residential real property (hereafter in this subsection referred to as the "lender") shall provide the following to the consumer as soon as reasonably practicable:
>
> (A) Information required under subsection (f)--
>
> (i) In general
>
> A copy of the information identified in subsection (f) of this section that was obtained from a consumer reporting agency or was developed and used by the user of the information.
>
> (ii) Notice under subparagraph (D)

8

**In addition to the information provided to it by a third party that provided the credit score or scores, a lender is only required to provide the notice contained in subparagraph (D).**

(B) Disclosures in case of automated underwriting system

(i) In general

If a person that is subject to this subsection uses an automated underwriting system to underwrite a loan, that person may satisfy the obligation to provide a credit score by disclosing a credit score and associated key factors supplied by a consumer reporting agency.

(ii) Numerical credit score

However, if a numerical credit score is generated by an automated underwriting system used by an enterprise, and that score is disclosed to the person, the score shall be disclosed to the consumer consistent with subparagraph (C).

(iii) Enterprise defined

For purposes of this subparagraph, the term "enterprise" has the same meaning as in paragraph (6) of section 4502 of Title 12.

(C) Disclosures of credit scores not obtained from a consumer reporting agency

A person that is subject to the provisions of this subsection and that uses a credit score, other than a credit score provided by a consumer reporting agency, may satisfy the obligation to provide a credit score by disclosing a credit score and associated key factors supplied by a consumer reporting agency.

(D) Notice to home loan applicants

A copy of the following notice, which shall include the name, address, and telephone number of each consumer reporting agency providing

9

a credit score that was used:

**NOTICE TO THE HOME LOAN APPLICANT**

In connection with your application for a home loan, the lender must disclose to you the score that a consumer reporting agency distributed to users and the lender used in connection with your home loan, and the key factors affecting your credit scores.

The credit score is a computer-generated summary calculated at the time of the request and based on information that a consumer reporting agency or lender has on file. The scores are based on data about your credit history and payment patterns. **Credit scores are important because they are used to assist the lender in determining whether you will obtain a loan**. They may also be used to determine what interest rate you may be offered on the mortgage. Credit scores can change over time, depending on your conduct, how your credit history and payment patterns change, and how credit scoring technologies change.

Because the score is based on information in your credit history, it is very important that you review the credit-related information that is being furnished to make sure it is accurate. Credit records may vary from one company to another.

If you have questions about your credit score or the credit information that is furnished to you, contact the consumer reporting agency at the address and telephone number provided with this notice, or contact the lender, if the lender developed or generated the credit score. The consumer reporting agency plays no part in the decision to take any action on the loan application and is unable to provide you with specific reasons for the decision on a loan application.

If you have questions concerning the terms of the loan, contact the lender.

15 U.S.C. § 1681g(g)(emphasis added). *See also Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 469 (W.D. Va. 2011)(describing the

requirements and cause of action generally); *Kingery v. Quicken Loans, Inc.*, 300 F.R.D. 258, 261 (S.D.W. Va. 2014)(same).

Congress mandates that the credit score information obtained by a creditor be provided along with various notices to consumers as soon as reasonably practicable. 15 U.S.C. § 1681g(g); *See also* 75 FR 2741, Equal Credit Opportunity, 76 FR 41590-01 (July 15, 2011) (The Board of Governors of the Federal Reserve System in addressing regulations and model disclosures from the Equal Credit Opportunities Act, the Board noted that several federal "Agencies [previously had identified] that industry practice is generally to provide the credit score disclosure within three business days of obtaining a credit score and the Agencies would expect the integrated disclosure generally would be provided within the same timeframe").[3]

------------------------

[3] Since enactment of Section 609(g) of the FCRA, the various agency interpretations, regulatory review guidance, and analysis have also been consistent in applying the mandatory requirements to mortgage loan applications. For example, the Board of Governors for the Federal Reserve System, Division of Consumer and Community Affairs' Consumer Compliance Handbook (11/6) (available at http://www.federalreserve.gov/boarddocs/supmanual/cch/200611/fcra.pdf) at Page FCRA ● 21 explains:

> FCRA, section 609(g), requires financial institutions that make or arrange mortgage loans using credit scores to provide the score, with accompanying information, to applicants...

3. Credit under the FCRA.

"Credit" is defined under the FCRA by borrowing from the definition of "credit" from the Equal Credit Opportunity Act. *See* 15 U.S.C.A. § 1681a(r)(5)("The terms "credit" and "creditor" have the same meanings as in section 1691a of [the Equal Credit Opportunity Act (ECOA)]". Under ECOA, "[t]he term "credit" means **the right granted by a creditor to a debtor to defer payment of debt** or to incur debts and defer its payment or to purchase property or services and defer payment therefor."

---

The disclosure requirement applies to both closed end and open-end loans that are for consumer purposes and are secured by one-to four-family residential real properties, including purchase and refinance transactions. The requirement does not apply in circumstances that do not involve a consumer purpose, such as when a borrower obtains a loan secured by his or her residence to finance his or her small business.

*Id.* (a courtesy copy is attached as Exhibit 1).

**This disclosure requirement applies to any application for a covered transaction**, regardless of the final action on the application taken by the lender....

The statute requires that the disclosure be provided as soon as is reasonably practicable after the credit score is used.

*Id.* at FCRA ● 22 (emphasis added)(attached at JA 207-209).

15 U.S.C.A. § 1691a(d)(emphasis added).[4]

The cases that have considered whether home loan modifications constitute credit applications have held that it involves an application for credit. *See Estate of Davis v. Wells Fargo Bank,* 633 F.3d 529, 538 (7th Cir. 2011); *Walton v. Wells Fargo Bank, N.A.* 2013 WL 3177888, 6 (D.Md.,2013); *Piotrowski v. Wells Fargo Bank, N.A.* 2013 WL 247549 (D.Md.,2013); *Vasquez v. Bank of Am. , N.A.*, 13-CV-02902-JST, 2013 WL 6001924, *13 (N.D. Cal. Nov. 12, 2013)("The Court finds the analysis in both Davis and the Federal Reserve letter persuasive, and now holds that a home loan modification request constitutes a "credit application" under ECOA"); *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204 (9th Cir. 2013)(applying ECOA requirements to acceleration of existing loan and cases cited above).

These court decisions are consistent with the position that various authorized agencies have taken. *See* HAMP Supplement Directive 09-08 (November 3, 2009); (JA 211-219); Federal Reserve CA-09-13 (December 4, 2009)(JA221-223); San Francisco Federal Reserve Bank Letter dated

---

[4] *See also* 12 C.F.R. § 202.2(j)("Credit means the right granted by a creditor to an applicant to defer payment of a debt, incur debt and defer its payment, or purchase property or services and defer payment therefor").

December 23, 2009 (JA 225-226). The existence of a credit agreement does not deprive consumers of their rights under the Consumer Credit Protection laws. *See Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204 (9th Cir. 2013)(applying ECOA requirements to acceleration of existing loan and cases cited above).

Because the FCRA incorporates ECOA's definition of "credit," which expressly includes the right to defer payments or to incur debts, § 1681g(g) by its terms involves credit applications that are in the form of requests for loan modifications or refinance loans relating to residential mortgage loans. Further, the application of ECOA's standards in such a manner is entirely consistent with congressional intent related to the enactment of § 1681g(g). 149 Cong. Rec. E2512-02, 149 Cong. Rec. E2512-02, 2003 WL 22900844 (describing the disclosure requirements added by the FACT Act "intended to be consistent with the provisions of the Equal Credit Opportunity Act (ECOA)"). Accepting the District Court's view and ignoring the interpretation of 'credit' under ECOA would simply be taking away the express interpretation intended and adopted by Congress in its enactment of § 1681g(g).

Finally, the types of credit that are available to homeowners is either closed end credit or open end credit. Both are merely particular types of

14

credit. *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 286 at FN 22 (S.D.N.Y. 2011)("A closed-end credit transaction is one where the finance charge is divided into the term of the loan and incorporated into time payments, and includes a completed loan such as a mortgage or car loan." *McAnaney v. Astoria Fin. Corp.,* No. 04–CV–1101, 2008 WL 222524, at *4 (E.D.N.Y. Jan. 25, 2008) (internal quotation marks omitted). "By contrast, an 'open-end' credit transaction is one in which 'the creditor reasonably contemplates repeated transactions, ... and ... provides for a finance charge which may be computed from time to time on the outstanding unpaid balance," such as a credit card. *Id.* (quoting 15 U.S.C. § 1602(i)").

There can be no meaningful contention that an application for a loan modification by a borrower and a non-borrower spouse, as was the situation of Mr. & Mrs. Bartlett, is not an application for credit under the FCRA. By its very nature a loan modification seeks to 'defer debt' which is owed. BANA admits that Mrs. Bartlett owed it a sum of money. JA at 96, 107, 130. BANA also admits and represented to Mr. & Mrs. Bartlett that a modification "is designed to help homeowners who are having difficulty making their payments by modifying loans to a level that is affordable for borrowers and sustainable for the long term." JA at 134.

15

4. The application for credit requirement was met because the Plaintiff's applications related to a loan that was "for a consumer purpose that is secured by 1 to 4 units of residential real property".

Mr. & Mrs. Bartlett's application(s) for a loan modification concerned their personal residence and the applications presented to BANA were for personal purposes related to their single family residence. JA 8 (Com. at ¶¶ 5-8). *See also* JA 20, 49 (DOT, RMA (Page 1)).

b. BANA never timely provided Mr. or Mrs. Bartlett, the credit scores they obtained in connection with their application for credit nor did the Defendant provide them the disclosures required under § 1681g (g)(1)(D).

BANA never provided Mr. Barlett with any information about his credit scores whatsoever. JA 11 (Com. ¶ 27). BANA knew that he had applied to it for a closed end loan for which he was not previously a borrower (JA 8-22 (Com. at ¶¶ 7-17, 20-22, 24)).[5] Further, BANA did not disclose to Mrs. Bartlett until February 7, 2013—more than 297 days after the fact—that "[a]s part of [its] review process in determining [Mrs.

---

[5] *See also* JA 48-93 (BANA Exhibit 3 [ECF. 26-6]) to which BANA requested the District Court to take judicial notice represented that Mr. Bartlett was a co-borrower and applicant for the loan modification request (Mr. Bartlett (i) signed the RMA as co-borrower, (ii) permitted BANA to request his tax return as part of the application, and (iii) included his hardship information, income and employment information).

16

Bartlett's] eligibility [for a loan modification, that it] obtained [her] credit score from a consumer reporting agency and used it in making [its] credit decision." JA 175; *see also* JA 10-11 (Com. ¶¶ 23-27). When BANA finally disclosed to Mrs. Bartlett that it had used her credit score in considering her and her husband's application for a loan modification, it failed to send the notice in the form proscribed by 15 U.S.C. § 1681g(g). JA 175-176; *see also* JA 11 (Com. ¶ 27).

      c.    The District Court erred by modifying 15 U.S.C. § 1681g(g) to only apply to "new" applications for credit.

The District Court rested its decision in regards to Mrs. Bartlett on its statement:

> There is no doubt that Connie applied for a modification of her pre-existing loan and not for a **new**, closed end loan.

JA 256.

Respectfully to the District Court, this ruling is at odds with the plain language of the statute. The District Court rewrites the statute in a way never intended by Congress and is reached by overlooking basic cannons of statutory construction. As this Court has explained before:

> courts should be extremely cautious not to add words to a statute that are not found in the statute— and should be careful, too, not to decrease deliberately the extension of a word or

17

phrase by increasing its intension. Statutory Intensive Spurious Interpretation is the very rare exception, certainly not the rule. Shadowy though it may sometimes be, and however difficult may be its tracing, there is, though, a line, very real indeed, between the legislative function and the judicial function. Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A. 1917F, 502, Ann.Cas. 1917B, 1168; *735 LaBelle Iron Works v. United States, 256 U.S. 377, 393, 41 S.Ct. 528, 65 L.Ed. 998; Smietanka v. First Trust & Savings Bank, 257 U.S. 602, 607, 42 S.Ct. 223, 66 L.Ed. 391; Iselin v. United States, 270 U.S. 245, 251, 46 S.Ct. 248, 70 L.Ed. 566; Crooks v. Harrelson, 282 U.S. 55, 51 S.Ct. 49, 75 L.Ed. 156.

*Fides, A.G., v. Comm'r of Internal Revenue*, 137 F.2d 731, 734-35 (4th Cir. 1943). *See also Ignacio v. United States*, 674 F.3d 252, 255 (4th Cir. 2012)("'[C]ourts must construe statutes as written, [and] not add words of their own choosing,' *Barbour v. Int'l Union,* 640 F.3d 599, 623 (4th Cir.2011) (en banc) (Agee, J., concurring in the judgment); *see also United States v. Deluxe Cleaners & Laundry, Inc.,* 511 F.2d 926, 929 (4th Cir.1975) ('[W]e do not think it permissible to construe a statute on the basis of a mere surmise as to what the Legislature intended and to assume that it was only by inadvertence that it failed to state something other than what it plainly stated.' (quoting *Vroon v. Templin,* 278 F.2d 345, 348–49 (4th Cir.1960))").

The Supreme Court has also always been skeptical of attempts to add words into a statute that Congress could have inserted itself if it desired. *See, e.g., United States Dept. of Transp. v. Paralyzed Veterans of Am.*, 477

18

U.S. 597 (1986) (refusing to add words "indirect recipients" to Rehabilitation Act); *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994) (refusing to add words "aiding and abetting" to securities statute). Attempts to infer restrictions in broad remedial legislation are particularly suspect. *See North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 530 (1982); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798-99 (1973). Certainly Congress knew how to limit the scope of 15 U.S.C. § 1681g(g) to only "new" applications if it had wished to do so but it did not.

There is nothing in 15 U.S.C. § 1681g(g) that limits it to only "new" closed end loans. Congress included express limitations on the disclosures required by § 1681g(g). It is significant that the District Court rested on a limitation that Congress did not choose to include in the statute. Given that Congress chose to apply a definition of credit that does not limit itself to "new" transactions and specifically includes changes to existing loan arrangements, the District Court's imposition of a "new" requirement is without statutory basis. Therefore, the District Court erred when it granted the Defendant's Motion to Dismiss. The District Court's judgment should be reversed by this Court.

## II. MR. BARTLETT WAS NOT AN OBLIGOR UNDER MRS. BARTLETT'S LOAN. HE MADE AN APPLICATION FOR A CLOSED END LOAN TO THE DEFENDANT.

As set forth above, the Plaintiffs contend that the District Court erred in its interpretation that limited the scope of § 1681g(g) to "new" loans. However, if this Court disagrees, that does not extinguish Mr. Bartlett's claim against the Defendant under the FCRA. Plaintiffs alleged that Mr. Bartlett was not obligated on Mrs. Bartlett's loan. For Mr. Bartlett it was not merely a modification but an initial application since he was not a borrower whatsoever on the loan sought to be modified.

Looking beyond the well-pled facts before it, the District Court surmised and made a factual finding that Mr. Bartlett was not entitled to pursue his claim because there was no evidence before the court that Mr. Bartlett was willing to become obligated on the loan. JA 256 (whether Mr. Bartlett "was applying for a new loan to be issued to him or was even agreeing to accept personal liability on the existing loan issued to [Mrs. Bartlett].)" This factual determination was not appropriate at the motions to dismiss stage. *Tysons Toyota, Inc. v. Globe Life Ins. Co.,* 45 F.3d 428 (4th Cir. 1994)(certain disputed factual determinations not appropriate at the motions to dismiss stage); *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583

20

(6th Cir. 1992)(same); *Monster Daddy, LLC v. Monster Cable Products, Inc.*, CA 6:10-1170-TMC, 2012 WL 2513466, *3 (D.S.C. June 29, 2012)("While [the [Defendant] may ultimately prevail before a fact finder, at the motion to dismiss stage, it is entirely inappropriate for the court to engage in a fact-finding mission").

a. **Mr. Bartlett was an applicant.**

Congress intended for § 1681g(g) to be consistent with the Equal Credit Opportunities Act (*see* 149 Cong. Rec. E2512-02, 149 Cong. Rec. E2512-02, 2003 WL 22900844). If the District Court had wished to look beyond the well pled facts before it, the definition of "application" under other parts of Congress' Consumer Credit Protection Acts and related regulations qualified Mr. Bartlett as an applicant. There is nothing requiring any affirmation at the pleading stage that he would have co-signed on any modification (a fact which he would confirm in discovery if asked).

The term "applicant" is defined at 15 U.S.C. § 1691a(b) that provides "the term 'applicant' means any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." "Applicant" includes those who seek to

21

modify existing loans. *See* e.g., *Estate of Davis v. Wells Fargo Bank,* 633 F.3d 529, 538 (7th Cir. 2011).

In addition, Regulation B, 12 CFR § 202.2 (e), also provides a definition of "application"; it "means an oral or written request for an extension of credit that is made in accordance with procedures used by a creditor for the type of credit requested." Finally, the ordinary meaning for the term "application" is "[a] request or petition." APPLICATION, Black's Law Dictionary (9th ed. 2009). As an applicant, Mr. Bartlett was entitled to the disclosures mandated by § 1681g(g).

Moreover, if the District Court's was inferring that Mr. Bartlett did not seek to become obligated on the loan, that inference is inconsistent with the facts and does not comport with the standard that all reasonable inferences are to be construed in favor of the non-movant. The documents before the District Court showed that he had submitted applications and financial information. It is reasonable to infer that he took those actions for the purpose of applying for credit, which here meant becoming obligated on Mrs. Bartlett's loan. The District Court erred in granting the Defendant's Motion to Dismiss as to Mr. Bartlett's claims.

**CONCLUSION**

Congress enacted § 1681g (g) and specifically set forth limitations on its application. The limitations set forth by Congress did not limit it to only "new" loans. Yet, the District Court's opinion rested on the interpretation that § 1681g (g) only applied to "new" loans. In addition to adding a word to the statute, the interpretation is at odds with the term "credit" that has been found to apply to loan modifications by several courts. For this reason and the reasons set forth herein the District Court's judgment should be reversed and the case remanded for further proceedings.

Alternatively, if the term "new" can be added to § 1681g (g) through a judicial interpretation, the limitation does not affect Mr. Bartlett's claims since he had no existing credit relationship with the Defendant when he made an application to the Defendant. Therefore, the dismissal of his claims was in error and should be reversed.

Respectfully submitted,

/s/ Scott C. Borison_____
SCOTT C. BORISON
Legg Law Firm, LLC
1900 S. Norfolk St.
Suite 350
San Mateo CA 94403
(301) 620 1016
Fax (301) 620-1018

23

Borison@legglaw.com

Phillip R. Robinson
Consumer Law Center LLC
8737 Colesville Road
Suite 307
Silver Spring, MD  20910
(301) 637-6270
Phillip@marylandconsumer.com

ATTORNEYS FOR THE
APPELLANTS

24

## REQUEST FOR ORAL ARGUMENT

Plaintiffs request oral argument in this case because the case involves a case of first impression.

Respectfully submitted,

/s/ Scott C. Borison_____

## CERTIFICATE OF SERVICE

I certify that on October 22, 2014 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or; if they are not, by serving a true and correct copy at the addresses listed below:

N/A

___/s/_____
Scott C. Borison

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 14-1895          **Caption:** Byron Bartlett et al., v. Bank of America NA

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[✓]  this brief contains _____5021_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ]  this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[✓]  this brief has been prepared in a proportionally spaced typeface using
Microsoft Word _____ [*identify word processing program*] in
14 Pt Georgia _____ [*identify font size and type style*]; **or**

[ ]  this brief has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Scott C. Borison _____

Attorney for Appellants _____

Dated: 10/22/14 _____